IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SCOTT MCARDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09-CV-927-WKW [WO] |
| | ) | |
| JAMES CARTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on Defendants James Carter, Carter & Tate, P.C., and James E. Carter & Associates, LLC's Motion to Transfer Venue. (Doc. # 20.) On June 9, 2010, oral argument was held on the motion. (*See* Doc. # 28.) Upon careful consideration of counsel's arguments, the relevant law, and the record as a whole, the court finds that the motion is due to be denied.

## I. BACKGROUND

Plaintiff Scott T. McArdle filed suit in the Circuit Court of Montgomery County, Alabama, on August 20, 2009, asserting ten claims arising out of a fee-splitting arrangement between himself and Defendants. (Compl. (Doc. # 1, Ex. A).) Defendants removed the action to this court on October 2, 2009, (Doc. # 1), and the court subsequently denied Mr. McArdle's motion to remand (Doc. # 13).

Mr. McArdle claims that he and Defendants entered into a binding agreement under which Defendants would remit to Mr. McArdle forty percent of attorneys' fees earned from

the prosecution of a Georgia civil suit stemming from the death of Justin Hall.  (Compl. ¶ 6.)

After the sole heir to Justin Hall's estate filed a bankruptcy action, the bankruptcy trustee

hired Defendants to continue to represent the estate.  (Compl. ¶ 10.)  Mr. McArdle alleges

that Defendants – without notifying or updating him – settled a portion of the suit and refused

to remit Mr. McArdle's portion of the fees.  (Compl. ¶¶ 12-13.)  The record establishes the

following facts.

Mr. McArdle is an attorney residing in Montgomery, Alabama, located in the Middle

District of Alabama.  (McArdle Decl. ¶ 2 (Doc. # 23, Ex. A).)  His principal place of business

– a private legal practice – is also located in Montgomery, Alabama.  (McArdle Decl. ¶ 2.)

Defendant James Carter is an attorney residing in Savannah, Georgia, with his principal place

of business in Savannah, Georgia.  (Carter Decl. ¶ 2 (Doc. # 21, Ex. A).)  Mr. Carter is the

corporate representative of Defendants Carter & Tate, P.C.[1] and James E. Carter &

Associates, L.L.C., two law firms located in Savannah, Georgia.  (Carter Decl. ¶¶ 1, 3.)

Savannah is located in the Southern District of Georgia.  (Carter Decl. ¶ 4.)

The parties' working relationship began in 2002, when Mr. McArdle and Mr. Carter

agreed to jointly represent Abby Reid, an Alabama resident injured in an Alabama motor

vehicle accident.  (McArdle Decl. ¶ 4; Oct. 4, 2002 Letter from Carter to McArdle (Doc. #

23, Ex. A, Attach. 1).)  During the pendency of the Reid matter, the parties agreed to jointly

represent one of Mr. McArdle's clients, Harvey "Bo" Hall, whose son had died as a result

---

[1] Defendant Carter & Tate, P.C., while not formally dissolved, is no longer an active professional corporation.  (Carter Decl. ¶ 3.)

of medical malpractice related to a bariatric surgery procedure in Macon, Georgia, located in the Middle District of Georgia.[2]  (McArdle Decl. ¶ 5; Carter Decl. ¶¶ 5-9.)

Mr. McArdle and Defendants then entered into the agreement that forms the basis of this lawsuit.  (McArdle Decl. ¶ 5; Carter Decl. ¶ 8.)  Pursuant to this April 2003 oral contract formed in Alabama, Mr. McArdle was to receive forty percent of any attorneys' fees recovered from the malpractice claim.  (McArdle Decl. ¶¶ 5, 9; Carter Decl. ¶ 8.)  Mr. Carter states in his declaration that this percentage was "based upon [Mr. McArdle's] anticipated level of participation in the prosecution of the case."  (Carter Decl. ¶ 8.)

Around this time, Defendants contacted Mr. McArdle in Alabama and requested that Mr. McArdle engage in a targeted marketing campaign to advertise for victims of bariatric surgery in Alabama and divide the fees derived therefrom.  (McArdle Decl. ¶ 8; Carter Decl. ¶ 5.)  By letter dated April 16, 2003, Defendants noted that the joint advertising campaign had not "worked out as planned," but confirmed the earlier agreement with respect to the Hall matter.  (McArdle Decl. ¶ 9; Apr. 16, 2003 Letter from Carter to McArdle (Doc. # 23, Ex. A, Attach. 2).)  The letter, sent on Carter & Tate, P.C. stationery from Savannah, Georgia, states as follows:

---

[2] Mr. Hall previously had been referred to Mr. McArdle by Travis Creekbaum, an Alabama resident and Mr. McArdle's "long-time stockbroker and friend."  (McArdle Decl. ¶ 6.)  Upon receiving the referral, Mr. Hall contacted Mr. McArdle, requesting that he investigate the circumstances surrounding his son's death and assist in pursuing a lawsuit, if warranted.  (McArdle Decl. ¶ 6.)  Shortly thereafter, on January 8, 2003, Mr. Hall entered into a contingency fee agreement with Mr. McArdle. (McArdle Decl. ¶ 6.)  Mr. McArdle maintains that, while working exclusively in Alabama, he "conducted an extensive pre-suit investigation and determined that suit was warranted."  (McArdle Decl. ¶ 6.)

>I propose we share the following cases on the basis of a 60% - 40% sharing as we originally discussed:

>>1. Hall v. Coliseum Park, et al;
>>2. Meador v. Coliseum Park, et al;

>I think the Hall case is the better of the two. . . . .

>We will bear the expenses of these cases and will divide the net attorney fees sixty percent to our firm and fourty [sic] percent to yours.

>Best Regards,
>James E. Carter

(Apr. 16, 2003 Letter from Carter to McArdle.)

On September 5, 2003, Defendants filed suit on behalf of Mr. Hall in Bibb County, Georgia, located within the Middle District of Georgia.[3] (McArdle Decl. ¶ 10; Carter Decl. ¶ 9.) On October 6, 2003, represented by other counsel, Mr. Hall filed for bankruptcy in the Middle District of Georgia. (McArdle Decl. ¶ 10; Carter Decl. ¶ 10.) The bankruptcy judge appointed J. Coleman Tidwell, an attorney in Macon, Georgia, as the trustee for Mr. Hall's bankruptcy estate. (Carter Decl. ¶ 10.) Mr. Tidwell hired Defendants to represent the estate in March 2004. (McArdle Decl. ¶ 10; Carter Decl. ¶ 12.)

Mr. McArdle contends that Defendants failed to inform him of the bankruptcy or that Defendants had been hired by the trustee to prosecute the medical malpractice case. (McArdle Decl. ¶ 10.) Correspondence between the parties did, however, continue for

---

[3] The parties to the malpractice suit reside in the Middle District of Georgia. (Carter Decl. ¶ 9.)

4

several years, throughout Defendants' prosecution of the medical malpractice suit.  (*See* McArdle Decl. ¶ 11; Attach. 3.)[4]

Defendants settled with one of the defendants in the underlying medical malpractice case, and the bankruptcy court subsequently approved the settlement and the attorneys' fees. (Carter Decl. ¶ 15.)  The attorneys' fees were deposited into Mr. Carter's firm's bank account in Savannah, Georgia.  (Carter Decl. ¶ 15.)  The underlying medical malpractice case remains pending against the other defendants.  (Carter Decl. ¶ 15.)

## II.  STANDARD OF REVIEW

A district court may transfer a civil action to any other district in which it might have been brought "[f]or the convenience of the parties and witnesses," and "in the interest of justice."  28 U.S.C. § 1404(a).  Because federal courts usually accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice.  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  Some lower courts have found, however, that the deference afforded to a plaintiff's choice of forum is somewhat diminished in a removal case. *See First Fin. Bank v. CS Assets, LLC*, No. 08-0731, 2009 WL 1211360, at *6 (S.D. Ala. May 4, 2009); *Len Tran, Inc. v. Cal-Sungold, Inc.*, No. 808-CV-14, 2008 WL 2025287, at

---

[4] Letters from Carter & Tate, P.C. in January and September 2004 and in April 2005 provided Mr. McArdle with updates of the ongoing case.  (McArdle Decl., attach. 3.)  In a September 8, 2004 letter from Mr. Carter to Mr. McArdle, Mr. Carter referred to Mr. Hall as "*our* very depressed client." (McArdle Decl., attach. 3 (emphasis added).)  Mr. McArdle sent letters to Mr. Carter in February 2006, May 2007, and July 2007 expressing concern over the handling of the case and requesting additional updates.  (McArdle Decl., attach. 3.)

*3 (M.D. Fla. May 9, 2008); *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 947 (S.D. Ohio 2002).

Ultimately, a district court has "broad discretion in weighing the conflicting arguments as to venue," *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988), and must engage in an "individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

## III. DISCUSSION

Section 1404(a) mandates a two-step analysis. First, the court must determine whether the case originally could have been brought in the proposed transferee district. § 1404(a); *C.M.B. Foods, Inc. v. Corral of Middle Ga.*, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005). Second, the court must analyze whether, "[f]or the convenience of the parties and witnesses" and "in the interest of justice," the action should be transferred. § 1404(a); *Corral of Middle Ga.*, 396 F. Supp. 2d at 1286.

To meet the threshold requirement under § 1404(a), Defendants must demonstrate that, pursuant to 28 U.S.C. § 1391(a), the Middle District of Georgia is a proper venue for this action. Section 1391(a)(2)[5] states that a diversity action may be brought in "a judicial

---

[5] Subsections (1) and (3) of § 1391(a) do not apply to the case at hand. Section 1391(a)(1) states that a diversity action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." Here, although all Defendants reside in Georgia, none reside in the Middle

district in which a substantial part of the events or omissions giving rise to the claim occurred." Substantiality is a qualitative inquiry, and is "determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005). According to the Eleventh Circuit, "[o]nly the events that directly give rise to a claim are relevant" to the analysis. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).

Defendants propound three arguments as to why venue is proper in the Middle District of Georgia: (1) the underlying medical malpractice case was filed and prosecuted in the Middle District of Georgia; (2) the plaintiff in the underlying medical malpractice case, Mr. Hall, filed for bankruptcy in the Middle District of Georgia; and (3) the settlement and payment of the disputed fees were approved by the bankruptcy court in the Middle District of Georgia. (Defs.' Br. 2-3 (Doc. # 21).) For the reasons discussed below, the court finds Defendants' arguments unpersuasive.

"[A]ssessing the overall nature" of the complaint, *Daniel*, 428 F.3d at 433, it is clear that the bulk of Mr. McArdle's claims stem from the oral agreement (later confirmed by the April 16 letter) between the attorney parties to split the fees received from the prosecution of Mr. Hall's medical malpractice suit. Indeed, the restitution claim (Count I), breach of contract claims (Counts II and III), fraud claims (Counts VI-VII), and breach of fiduciary

---

District of Georgia. (*See* Carter Decl. ¶¶ 1-4 (stating that Defendants reside in Savannah Georgia, which is located in the Southern District of Georgia).) Section 1391(a)(3) only applies when "there is no district in which the action may otherwise be brought." Both parties agreed during oral argument that venue is proper in the Middle District of Alabama.

duty claims (Counts VIII-IX) expressly reference the agreement between the attorneys. Defendants' emphasis on the underlying medical malpractice suit and the bankruptcy court's subsequent approval of the fees is misplaced. Though prosecution of the civil claims on behalf of Mr. Hall may have been a condition precedent to receipt of the attorneys' fees under the oral contract, the agreements between Mr. Hall and various attorneys related to that underlying suit are not at issue. Other than Defendants' alleged failure to keep Mr. McArdle informed, Mr. McArdle does not contest the manner in which the underlying case was prosecuted or settled. Instead, the claims arise out of the formation of the fee-splitting agreement, the representations made during and after the agreement, and the failure to remit forty percent of the attorneys' fees received from the settlement proceeds.

Because *Bremer* dealt with a breach of contract claim, its analysis is instructive. In *Bremer*, the plaintiff, Jenkins Brick Company, filed suit against an ex-employee, John Bremer, for violation of a non-compete agreement. 321 F.3d at 1368. In transferring venue to the Southern District of Georgia pursuant to § 1404 (rather than § 1406), the Alabama United States District Court implicitly held that venue was proper in the Middle District of Alabama. *Id.* at 1369. Thus, the issue on appeal was whether the district court's implicit finding was correct, *i.e.*, whether venue was properly laid in the Middle District of Alabama. *Id.* at 1371. The court held that it was not. *Id.* at 1373.

In so holding, the Eleventh Circuit interpreted § 1391(a)(2)'s substantiality requirement narrowly: "[O]nly those acts and omissions that have a *close nexus* to the

wrong" are relevant in the venue analysis. *Bremer*, 321 F.3d at 1372 (emphasis added). Because the agreement at issue in *Bremer* was presented to the defendant in Georgia, executed in Georgia, intended to be performed in Georgia, and breached in Georgia, and because none of these acts or events occurred in the Middle District of Alabama, the court held that a substantial part of the acts giving rise to the plaintiff's claim did not occur in Alabama (indeed, none of the acts giving rise to the claim occurred in Alabama). Venue, therefore, was not proper in the Middle District of Alabama. *Id.* at 1372.

Similarly, here, the agreement that forms the basis of this lawsuit was not executed, performed, or breached in the Middle District of Georgia. The parties do not dispute that they entered into the agreement in Alabama; nor do they dispute that performance under the contract would be complete upon Defendants' remittance to Mr. McArdle in Alabama of forty percent of the fees earned.[6] The fees at issue were deposited in Mr. Carter's firm's bank account in Savannah, and, presumably, any money left over from those fees remains with Mr. Carter's firm in Savannah, in the Southern District of Georgia. Defendants' performance under the fee-splitting agreement would require Defendants to send forty percent of those fees from the Savannah to Mr. McArdle in Montgomery (in the Middle District of Alabama), where, upon his receipt, contract performance would be complete. Thus, although the underlying medical malpractice case that generated the fees occurred in the Middle District of Geogia, and although the Bankruptcy Court that affirmed the award

---

[6] Counsel for Defendants admitted as much during oral argument on the motion.

of attorneys' fees is located in the Middle District of Georgia, the contract itself was to be performed – and was ultimately breached – elsewhere.

Likewise, Defendants have not shown that a substantial part of the events or omissions giving rise to the restitution ("work and labor done"), fraud, or breach of fiduciary duty claims occurred in the Middle District of Georgia. The "work and labor done" claim stems entirely from Mr. McArdle's actions in the Middle District of Alabama. The alleged misrepresentations forming the bases of the fraud claims consist of statements made by Defendants to Mr. McArdle in Alabama (in conjunction with the agreement to jointly represent Mr. Hall) and the statements made by Defendants to Mr. McArdle from Savannah "maintain[ing] this misrepresentation." (Compl. ¶¶ 40, 42.) In fact, Mr. Carter stated in his declaration that all contact between Mr. McArdle and Defendants regarding the Hall matter were made "by phone, email or regular mail between [Mr. Carter's] office in Savannah, Georgia and [Mr. McArdle's] office in Montgomery, Alabama." (Carter Decl. ¶ 5.) Similarly, the breach of fiduciary duty claims arose from Defendants' alleged failure to pay Mr. McArdle in accordance with the agreement and from Defendants' alleged refusal to keep Mr. McArdle informed of the underlying medical malpractice case.

Based on the foregoing, the court finds that all of the events (and omissions) that form a "close nexus" to the wrong occurred in either Alabama or Savannah, Georgia, outside the Middle District of Georgia. The contract was executed and breached in Alabama; Defendants' alleged misrepresentations occurred in both Alabama (the original agreement)

10

and Savannah (via communications from the office of Defendant Carter & Tate, P.C.); Defendants' omissions relate to their failure to communicate, from their office in Savannah, the details of the ongoing case; Mr. McArdle's work on the Hall case was performed in Alabama; and the disputed fees were deposited in Savannah.  Defendants have failed to explain how the actual litigation of the underlying medical malpractice suit constitutes a "substantial part" of the events giving rise to the claims.  Accordingly, venue is not proper in the Middle District of Georgia, and Defendants § 1404 motion is due to be denied on this basis.[7]

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer Venue (Doc. # 20) is DENIED.

DONE this 6th day of July, 2010.

/s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[7] Even if this case could have been brought in the Middle District of Georgia, the court would nonetheless deny Defendants' motion.  In determining whether "[f]or the convenience of the parties and witnesses" and "in the interest of justice" the case should be transferred, the court considers the following factors: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).
Here, the parties and potential witnesses reside in both Alabama and Georgia, and the relevant documents and evidence are located in both states.  Thus, these factors are neutral, weighing neither in favor nor against transfer.  On the other hand, the forum's familiarity with the governing law, the weight (even if somewhat diminished) afforded Mr. McArdle's choice of forum, and considerations of efficiency and justice weigh against transfer.  Accordingly, in balancing these factors, the court finds that the "convenience of the parties and witnesses" and "the interests of justice" do not warrant transfer.